This is an appeal involving a right-of-way easement. The facts are undisputed.
In 1974 and 1975, the appellees, William M. Arrington and Betty A. Arrington, acquired land situated between Arrowhead Point Road, a public roadway in Dallas County, and the Alabama River. In 1977, the Arringtons began deeding parcels of land located off of Arrowhead Point Road, to their daughters, Susan, Olivia, and Rebecca. Prior to deeding the individual parcels of land to their daughters, the Arringtons commissioned a survey of each parcel, which resulted in a map of each parcel. Each daughter's deed expressly incorporated the survey map of her individual parcel of land.
The Arringtons retained title to the land adjacent to Arrowhead Point Road, as well as to a 20 foot wide, 500 foot long, strip of land separating the parcels of land which they had deeded to their daughters. The Arringtons constructed a gravel road on the 20' x 500' easement to provide Susan with access to Arrowhead Point Road and to provide Olivia with access to the river.
In 1979, the Arringtons deeded Rebecca a parcel of land, which contained 1.27 acres and was bordered on the west by the gravel road. The survey map of Rebecca's parcel, which was incorporated into Rebecca's deed, indicated the gravel road by a dotted line and referred to its width and length. Thereafter, Rebecca mortgaged her parcel to Sweetwater State Bank. The bank later foreclosed on the property and sold it to Robert Robinson and Freda Robinson on July 23, 1987, at a foreclosure sale. The original survey map was also attached to the mortgage and the foreclosure deed.
On August 12, 1987, the Robinsons sold the western half of their parcel to Lillian W. England and Suzanne E. Corkren (the Englands). The legal description in the deed from the Robinsons to the Englands, and a subsequent survey of the Englands' lot prepared by J.C. Crisman, Jr., both referred to the gravel road as an "access road." The Englands bought the lot with the understanding that they were acquiring use of the full length of the gravel road.
After acquiring the lot, the Englands laid a concrete sidewalk, which encroached on the width of the easement for 15 to 25 feet of its length. They planted shrubs and flowers and placed railroad cross-ties along the gravel road within the easement.
In December 1991, the Arringtons demanded that Lillian W. England remove the encroachments from along the gravel road. The Arringtons informed Lillian W. England that the Englands would be allowed access to their lot via the existing gravel road, to a point twenty feet south of the northwest corner of the lot.
On the morning of February 3, 1992, William Arrington placed two fence posts along the gravel road in preparation to erect a fence. Later that afternoon, he returned to find that the posts had been removed. He called the sheriff's office and reported the incident. When deputies questioned Neil England (Lillian England's husband) regarding the incident, he admitted that he had removed the posts and had thrown them into the river.
In late February 1992, the Arringtons filed a two-count complaint against Lillian W. England, Susan E. Corkren, and Neil England, in the Dallas County Circuit Court. Among other things, count one sought an injunction to prohibit the Englands from trespassing onto the Arringtons' 20 foot wide strip of land "from a point twenty-four (24) feet south of the north property line of [the Englands]." Count two sought damages for trespass from Neil England in the amount of $1,000 for his removal and destruction of the two fence posts Mr. Arrington had placed along the gravel road. The Englands counterclaimed, seeking an order granting them an easement along the full length of the gravel road and enjoining the Arringtons from interfering with the easement.
Following an ore tenus proceeding, the trial court entered judgment, granting the Englands access to Arrowhead Point Road by means of an easement by necessity, said easement beginning at a point 24 feet south *Page 738 
of the northwest corner of the Englands' lot, then continuing north along the gravel road and across the main portion of the Arringtons' land. However, the trial court enjoined the Englands from using any other portion of the Arringtons' land, including the remainder of the gravel road from 24 feet south of the northwest corner of the Englands' lot down to the river. The trial court also directed the Englands to remove the encroachments they had placed on the Arringtons' land and ordered Neil England to pay the Arringtons damages for trespass in the amount of $300. The Englands appeal.
We find the dispositive issue on appeal to be whether the Englands have full use of the 500 foot length of the gravel road.
The judgment of a trial court following an ore tenus presentation of the evidence is presumed correct, and "the findings will not be disturbed unless they are palpably wrong, without supporting evidence or manifestly unjust."Pinkston v. Hartley, 511 So.2d 168, 169 (Ala. 1987) (quotingSilverman v. Charmac, Inc., 414 So.2d 892, 894 (Ala. 1982)).
Traditionally, in Alabama, easements could be created only by deed, by prescription, or by adverse use for a statutory period. City of Montgomery v. Maull, 344 So.2d 492 (Ala. 1977);Kirkland v. Kirkland, 281 Ala. 42, 198 So.2d 771 (1967);Kratchoville v. Cloverleaf Plaza, Inc., 276 Ala. 562,165 So.2d 112 (1964). Our supreme court, in Helms v. Tullis,398 So.2d 253, 255 (Ala. 1981), set out several additional means by which an easement may be acquired: "(1) by express conveyance, (2) reservation or exception, (3) by implication, (4) by necessity, (5) by prescription, (6) by contract, (7) by reference to boundaries or maps."
An easement by implication requires original unity of ownership of the properties in question and that the use be open, visible, continuous, and reasonably necessary to the estate granted. Id. The record reflects that the Arringtons originally owned all of the lots in question and established the gravel road in question for their use.
The Englands contend that they have an implied easement along the full length of the twenty-foot strip (gravel road) based on Malone v. Jones, 211 Ala. 461, 100 So. 831 (1924). InMalone, the Alabama Supreme Court stated:
 "It is a general rule that, where a conveyance of land calls for a street or alley as a boundary, if the grantor has the fee of the land thus referred to, he is estopped as against his grantee to deny that it is a street, and an easement therein passes to the grantee by implication of law."
Malone, 211 Ala. at 462, 100 So. at 832-33; see also Teasley v.Stanton, 136 Ala. 641, 648, 33 So. 823, 824-25 (1902) ("When a grantor conveys land, bounding it on a way or street, he and his heirs are estopped to deny that there is such a street or way. This is not descriptive merely, but an implied covenant of the existence of the way. . . ."). However, the Malone court recognized that for this principle to apply, "the grantor must be the owner of the fee in the land represented as the street or way, and that the street or way be designated as a boundary." Malone, 211 Ala. at 463, 100 So. at 833. TheMalone court also noted an exception to the general rule in circumstances where "reference to the street or way is merely part of the description as a starting point or the termination of a line," because such references do not amount to an "assertion or acceptance of the street or way as a boundary."Id. (citing Talbert v. Mason, 136 Iowa 373, 113 N.W. 918
(1907)).
Thus, to determine whether an implied easement has arisen as to the Englands, this court must examine the deed from the Arringtons to their daughter Rebecca. At the time that deed was executed, the Arringtons were owners of the fee in both the gravel road and the land eventually passed to the Englands; therefore, that deed alone is material here. The Arringtons were strangers to the foreclosure sale and all further transactions regarding the Englands' lot. Hence, references to an "access road" as a boundary in the deed from the Robinsons to Lillian England and Suzanne Corkren are inconsequential in this matter.
The Arringtons did not designate the gravel roadway as a boundary when they deeded the lot to Rebecca. The legal description of *Page 739 
that lot does not refer to the roadway as a boundary. Although each parcel was described by metes and bounds, none of the three deeds from the Arringtons to their daughters describe or refer to the twenty-foot strip. InMalone and Teasley, the metes and bounds descriptions from which the court implied an easement specifically designated contemplated streets as boundaries. As the Englands concede, the metes and bounds description in the deed to Rebecca contains no such designation.
Instead, the Englands argue that an unlabeled dotted line corresponding to the gravel road on the survey attached to and incorporated in Rebecca Arrington's deed sufficiently designates the roadway as a boundary. In support of this argument, the Englands point to (1) testimony by their surveyor that the line could be interpreted as a roadway, (2) the Arringtons' concession that the gravel roadway existed at the time the land was deeded to Rebecca, and (3) the Arringtons' admission in their pleading that the twenty-foot strip is a road. The mere existence of a road running along the boundary of one's property does not imply an easement over that road, regardless of when the road was constructed. Nor is an admission of the existence of a road adjacent to another person's property evidence of an easement over the road for the benefit of that person. These indications do not appear in the deed upon which the implied covenant must be founded.
Furthermore, we can only surmise from the fact that the dotted line is unlabeled and does not even touch the Englands' lot that it is merely an aid in describing the lot's surroundings, just as is the survey's reference to the Alabama River; therefore, its presence on the map is less crucial than a reference to a street or way as a boundary as required to imply an easement. Malone. This court concludes that Malone requires a more affirmative designation in a deed to imply an easement over a roadway adjacent to it than an unlabeled dotted line on an attached survey.
The trial court correctly declined to grant the Englands and Corkren an easement any further down the twenty-foot strip than was necessary to allow them access to their property. The damages for trespass assessed against Neil England were also proper. The judgment of the trial court is affirmed.
AFFIRMED.
YATES, J., concurs.
THIGPEN, J., concurs in the result.